UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JESSICA SMITH, } | |
| } | |
|     Plaintiff, } | |
| } | |
| v. } | Case No.: 2:15-CV-00216-RDP |
| } | |
| CAROLYN W. COLVIN, Acting } | |
| Commissioner of Social Security, } | |
| } | |
|     Defendant. } | |

**MEMORANDUM OF DECISION**

Plaintiff Jessica Smith brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed in part and remanded in part.

**I.      Proceedings Below**

Plaintiff alleges a disability onset date of November 3, 2011, and filed her applications for disability, DIB, and SSI on the same day. (R. 283-284). Plaintiff's applications were denied on May 10, 2012. (R. 286). On June 8, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 34). Plaintiff's request was granted and a video hearing

was held on July 8, 2013. (R. 300-301). Plaintiff's attorney, Mr. Benson,[1] made an opening statement that was followed by testimony from Plaintiff and the vocational expert ("VE"). (R. 50-96).

In her August 19, 2013 decision, the ALJ determined that Plaintiff was not eligible for disability, DIB, and SSI, because she failed to meet the disability requirements of the Act and retained the residual functional capacity to perform light work with restrictions. (R. 38). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (R. 1). 42 U.S.C. §§ 405(g) and 1383(c).

## II.     Facts

At the time of the hearing, Plaintiff was 37 years old. She received a Bachelor's of Science in Psychology from the State University of Georgia in 2001,[2] and is the mother of two children. (R. 42, 61). Plaintiff alleges she has been unable to engage in substantial gainful activity since November 3, 2011. (R. 36). Prior to her alleged onset date of disability, Plaintiff served in the military in an administrative role, and held various civilian jobs including office manager, safety clerk, and staffer. (R. 42).

Plaintiff has a history of musculoskeletal pain. (R.39). She was diagnosed with a C7-8 radiculopathy in November 2011. (*Id.*) She complains of pain and claims it only allows her to stand for 10 minutes at a time, sit for 30 minutes at a time, and limits her mobility. (R. 66-67). Plaintiff further claims pain that she has suffered pain in and limited use of her right arm, both before and after having corrective surgery. (R. 70-71). Plaintiff also asserts that her pain issues

---

[1] Plaintiff changed counsel and retained Mr. John M. Pennington to represent her after the ALJ hearing. (R. 21).

[2] Plaintiff claims she completed her degree in 1998, but that it wasn't officially recorded by the University until 2001.

2

make it difficult to engage in personal hygiene, and affects her socially. (R. 39). However, she is able to "get her daughter ready for school, perform light housework and errands, and pick her daughter up from school," as well as do homework with her daughter, prepare simple meals, and attend and take classes at her church. *Id*.

Plaintiff was officially diagnosed with fibromyalgia, obesity, fatigue, hypersomnia, anxiety disorder, mild osteoarthritis in both knees, and lumbar degenerative disc disease in January 2012. (R. 39). She suffers from asthma, although her asthma is controlled by medication via an inhaler. (R. 67, 36). Plaintiff complains of having migraines at least once a week, some lasting 3-4 days, but treats the migraines by taking medication. (R. 68). She claims she has been taking anti-depressants for mental health since 2009. (R. 70).

In January 2011, one of Plaintiffs treating physicians, Dr. Abbot, determined that she was unable to continue her military service due to chronic pain. (R. 42). Another of Plaintiff's treating physicians, Dr. Kanatari, determined Plaintiff could not participate in military drill activity due to impairments. *Id*. Dr. Kanatari referred her to neurologist Dr. Diane Counce for her headaches. (R. 1349-1362). Dr. Counce felt that Plaintiff's headaches would cause a serious distraction from her job tasks. *Id*.

Additionally, consultant Sharon Waltz, Ph.D., performed a mental health examination on Plaintiff. (R. 40). Dr. Waltz diagnosed her with panic disorder and major depressive disorder. *Id*. Dr. Estock, the state agency medical consultant, found that Plaintiff's conditions would cause her to miss approximately one day of work per month, but that she was able to "understand, remember, and carry out detailed instructions, maintain attention and concentration for extended

periods, complete a normal workday and workweek without interruptions from psychologically based symptoms," with only moderate limitations.[3] (R. 41).

The VE who testified at her hearing indicated that Plaintiff's work as an office manager for Oak Mountain Construction Company was classified as "sedentary, highly skilled, with an SVP of 8" and her clerical work as an administrative assistant in the Army was classified as "sedentary, and skilled, with an SVP of 6." Plaintiff's other two jobs on record were that of a safety clerk[4] and a staffer.[5] The ALJ presented a hypothetical to the VE, inquiring as to whether a similarly situated person as Plaintiff could perform work at the light level, but with some additional limitations, including

> limited to frequent climbing, but ramps and stairs only, no ladders or scaffolds; no stooping, kneeling, crawling, crouching; avoid hazards; concentrated exposure to fumes and gases; able to perform simple, routine tasks, and a few detailed tasks; Occasional interaction with coworkers, and occasional and superficial interaction with the general public. With those limitations, could such a person perform any of the past work?

(R. 90). The VE responded in the negative, as those previous jobs would "not be in the simple category." *Id*. However, the VE stated there were other jobs that Plaintiff could perform such as a ticket taker, laundry worker, or a mold filler in the plastic manufacturing industry. *Id*. The ALJ then questioned the VE as to whether a person who "needed the option to sit at least every 45 minutes for about one to two minutes to alleviate discomfort, but they could continue working" would be able to perform these jobs. *Id*. The VE stated the hypothetical person could still work

---

[3] Dr. Estock determined Plaintiff was moderately limited in performing the following tasks: ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods of time, complete normal workday and work week without interruption from psychological symptoms, interact appropriately with general public, accept instructions and respond appropriately to criticism from supervisors, ability to respond appropriately to changes in the work setting, set realistic goals, making plans independently of others, and dealing with detailed or complex material and serial instructions. (R. 39-42).

[4] Classified by the VE as "sedentary, skilled, SVP of 5."

[5] Classified by the VE as "sedentary, semiskilled, SVP of 4."

4

as a ticket taker and mold filler, but not as a laundry worker. *Id*. The ALJ then posed another hypothetical, this time asking about such a person who was also further limited to more sedentary work with the option to stand every 30 minutes for one to two minutes. (R. 92). The VE responded that there were jobs such as weight testers in various industries, plastics manufacturing laminators, or bench hands for various types of industries. *Id*.

The VE also opined that the typical tolerance for off task percentage of time during a workday was 15 percent and that anything over was "not typically allowed". (R. 92-93). The VE also opined that absenteeism tolerance per month by employers was usually around 2-3 days. (R. 93).

### III.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).   Absent such impairment, the claimant may not claim disability. *Id.*

Under the third step of the analysis, the ALJ must determine whether the claimant's impairments meet or medically equals the criteria of an impairment listed in 20 C.F.R. § 404,

Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e).

After determining the claimant's RFC, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant is capable of performing any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ made the determination that Plaintiff had not engaged in any substantial gainful activity since November 3, 2011, her alleged onset date. (R. 36). The ALJ further determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016.

The ALJ further found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the spine status-post cervical fusion with radiculopathy, migraines,

fibromyalgia, restless leg syndrome, poor sleep efficiency, obesity, mild bilateral knee osteoarthritis, asthma, carpel tunnel syndrome, depression, and panic disorder. *Id*. The ALJ concluded that the following impairments were non-severe: acute mononucleosis,[6] GERD, vitamin D deficiency, and headaches. *Id*. The ALJ determined that there were no medical findings, or suggestions in the medical record, that any of Plaintiff's impairments meet or equal the conditions or severity requirements for any listed impairment. (R. 37).

Taking into consideration the testimony of the VE, the ALJ determined that Plaintiff but is unable to perform any past relevant work. has the RFC to perform light work with some limitations. (R. 38, 42). After consideration of the above factors and the vocational expert's testimony, the ALJ found that Plaintiff -- a younger individual (37 years old at her alleged disability onset date), with at least a high school education and capable of communicating in English -- was able to perform jobs that exist in significant numbers in the national economy, and is therefore not disabled. (R. 43).

## IV. Plaintiff's Argument for Reversal

Plaintiff raises three issues in this appeal. First, she argues that ALJ improperly dismissed her subjective testimony concerning her impairments and pain. (Pl.'s Br. 2-3). Second, Plaintiff asserts that the ALJ's determination of her RFC was improper because it was not supported by substantial evidence, did not provide appropriate rationale, made no specific references to the evidence to support the decision, and did not address Plaintiff's non-exertional impairments. *Id*. Finally, Plaintiff contends that the Appeals Council failed to consider the medical source statements of three of her treating physicians which were submitted while the case was still

---

[6] The ALJ determined that Plaintiff's mononucleosis did not continue for over twelve continuous months and there is a lack of objective medical evidence that the other impairments would impose more than minimal work related limitations. (R. 36).

pending before the Appeals Council. *Id*. Plaintiff argues that ALJ improperly dismissed her subjective testimony in regards to her pain. *Id*.

## V.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence, "it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**VI.    Discussion**

After careful review, and for the following reasons, the court concludes that the ALJ's decision is due to be affirmed in part and remanded in part.

> **A.    The ALJ Did Not Improperly Dismiss Plaintiff's Subjective Testimony Regarding her Pain, and the Determination of Plaintiff's Residual Functional Capacity Was Proper.**

Plaintiff initially argues that the ALJ improperly dismissed her subjective testimony and improperly determined her RFC. The court disagrees.

Plaintiff bears the burden of proving that she is disabled. U.S.C. § 423(d)(1)(A), (d)(5); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The ALJ's findings regarding Plaintiff's pain and impairments are supported by substantial evidence. The ALJ evaluated "the extent to which [Plaintiff's reported] symptoms can reasonably be accepted as consistent with the objective medical science." (R. 39). In considering Plaintiff's claims, the ALJ followed the two step process by first determining whether there were "underlying medically determinable physical or mental impairment(s)" and then evaluating the "intensity, persistence, and limiting effects" of Plaintiff's symptoms to determine how they limit her ability to work. (*Id.*).

The ALJ took into consideration Plaintiff's reports of musculoskeletal pain, difficulty with personal hygiene due to pain, and social difficulties in public. (*Id.*). The ALJ then weighed that evidence against Plaintiff's testimony and Plaintiff's husband's statement. The ALJ found Plaintiff was able to "get her daughter ready for school, perform light housework and errands, and pick her daughter up from school." (*Id.*). The ALJ also found that Plaintiff was able to do homework with her daughter, prepare simple meals, and attend and take classes at her church. (*Id.*). Furthermore, the ALJ concluded that the record evidence as a whole did not support

Plaintiff's claims in regard to her pain, but instead showed that Plaintiff's pain merely limited her ability to perform the full range of light work. (R. 41).

The ALJ also took into account the opinions of the consultants that examined Plaintiff on behalf of the Social Security Administration. (R. 39-42). Dr. Estock, the state agency medical consultant, reported that Plaintiff was only moderately limited in her abilities to perform in a work setting. (*Id.*). After weighing all relevant facts, the ALJ concluded that Plaintiff's limited mental health treatment and overall normal performance during consultative exam did not support the claims by Dr. Estock that Plaintiff was limited to well-known tasks or infrequent social contact. (*Id.*). The consultative examiner, Dr. Waltz, stated Plaintiff has a fair ability, given her psychological symptoms, to understand and remember instructions, as well as perform those instructions. (*Id.*). Dr. Waltz also stated that Plaintiff could respond appropriately to supervision, coworkers, and work pressure in general. *Id*. However, Dr. Waltz also stated she believed Plaintiff likely had a history of mental slowness, but is able to function with assistance from her spouse. (*Id.*). Again upon considering Plaintiff's education, limited mental health treatment, and normal performance during her examination, the ALJ found only moderate limitations. (*Id.*).

A claimant's residual functional capacity is defined as the most one can do in a work setting despite any impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ takes into account both severe and non-severe symptoms that are medically determinable, as well as all evidence both medical and non-medical. *Id*.

> We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to

> help you get medical reports from your own medical sources. We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

*Id*. at §§ 404.1545, 404.1545(a)(3).

After careful review, the court finds that ALJ properly determined Plaintiff's residual functional capacity in accordance with the evidence at the time of the decision, as there was substantial evidence supporting the ALJ's finding.

### B. The Appeals Council Improperly Failed to Consider New, Material, and Chronologically Significant Evidence.

Plaintiff next argues that the Appeals Council failed to consider new evidence that was offered to it during the appeal process. "With few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process." *Washington v. SSA* 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). The Appeals Council "must consider new, material, and chronologically relevant evidence." *Ingram*, 496 F.3d at 1261. Our Circuit applies the standard that "when the Appeals Council erroneously refuses to consider new evidence, it commits legal error and remand is appropriate." The question of whether the Appeals Council improperly refused to consider new evidence is a question of law subject to *de novo* review. *Washington* at 1320-1321.

The first issue is whether the evidence presented to the Appeals Council is new and noncumulative. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). The evidence submitted to the Appeals Council is "new" as it was not previously before the ALJ; rather it was submitted during the appeal process. (R. 2). Furthermore, the evidence is "noncumulative" as it provides additional medical evidence to support Plaintiff's allegations of severe pain associated with her

symptoms. Moreover, although the ALJ gave the original statements produced by Plaintiff's physician "reduced probative weight" as they came before her alleged disability onset date, these new statements address the time after the alleged disability onset date and it was not available during ALJ's hearing. (R. 1-2, 42).

Second, the court considers whether or not the new evidence is material. New evidence is material if "there is a reasonable possibility that [it] would change the administrative outcome." *Hyde* at 459 (11th Cir. 1987). In her decision, the ALJ gave "reduced probative weight" to the fact that the statements the ALJ received from Plaintiff's treating physicians (regarding her inability to participate in military drills and ultimately service) were made before Plaintiff's alleged disability onset date. (R. 42). The medical source statements that were filled out and submitted by Plaintiff's treating physicians after Plaintiff changed legal counsel, provide additional evidence concerning how many days Plaintiff would miss monthly at work and how much time she would be "off task" due to the pain she experiences. (R. 14-25). As mentioned previously, the VE opined that the typical tolerance for off task percentage of time during a workday was 15 percent, and that anything over that was "not typically allowed." (R. 92-93). The VE also opined that absenteeism tolerance by employers in a month was usually around 2-3 days. (R. 93).

The medical source statements offered by both Dr. Kanatari and Dr. Abbot proffer evidence that Plaintiff would not be able to stay on task and would miss more work than the VE testified is "typically allowed" by employers. (R. 14-25, 92-93). For example, the treating physicians believed that Plaintiff's performance in a job where she would be required to sit or stand for prolonged periods of time would increase her pain (R. 14), and her pain would increase "to such an extent that it would cause serious distraction from job tasks and/or result in a failure

to complete job tasks in a timely manner on more than an occasional basis during typical workday and/or workweek." [7] (R. 14-15, 23). Dr. Abbot made an additional comment referring to 2011, when Plaintiff was still able to work, which indicates that she "would have to miss about 10 days out of the month" due to her symptoms. (R. 25).

Finally, the court examines whether the evidence presented to the Appeals Council was chronologically relevant. *Ingram*, 496 F.3d at 1261. This court finds that the medical statements by Plaintiff's treating physicians are chronologically relevant even though they were made after the ALJ's decision. This is the case because these statements were made by Plaintiff's treating physicians, who understood her symptoms from their early formation through her alleged disability onset date. Even though the medical statements submitted by Plaintiff's treating physicians never explicitly state that their opinions relate back to after the onset date, "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." *Washington* at 1322.

The Appeals Council was required to consider the medical statements prepared by Plaintiff's treating physicians, as they are new, material, and chronologically relevant. Thus, the Appeals Council committed legal error when it refused to consider the medical source statements from Dr. Ken Kanatari, Dr. Joel Abbot, and Dr. Diane Counce. This case is due to be remanded to allow for such consideration. *Id*. at 1320-1321. (R. 1-4).

## VII.  Conclusion

The evidence of record available at the time the ALJ made her determination supports her finding that Plaintiff is not disabled. The ALJ's determination is supported by substantial evidence and the proper legal standards were applied. However, the Appeals Council committed

---

[7] The term "occasionally" is defined as up to 1/3 of the workday according to Department of Labor's Dictionary of Occupational Titles.

error by refusing to consider new evidence offered by Plaintiff's treating physicians. The court finds the evidence presented by Plaintiff is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1320. The Commissioner's final decision is therefore due to be affirmed in part and remanded in part. A separate order in accordance with this memorandum of decision will be entered.

      **DONE** and **ORDERED** this June 16, 2016.

                                        **R. DAVID PROCTOR**
                                        UNITED STATES DISTRICT JUDGE